## CONNECTICUT MUT. LIFE INS. CO. v. STEWART et al.

### No. 4397.

District Court, D. Massachusetts.

Jan. 24, 1938.

Frederick H. Nash, of Boston, Mass., for plaintiff.

Kendall L. Johnson, of Woburn, Mass., for defendants Lillie S. Stewart, Anna Jaquith and Edward Johnson.

John M. Morrison and Sawyer, Hardy, Stone & Morrison, all of Boston, Mass., for defendant Betty Linscott.

Kenneth B. Williams, of Boston, Mass., for defendant Charles Choate Memorial Hospital.

McLELLAN, District Judge.

Conflicting claims under four life insurance policies are involved in this bill, which cannot be sustained as a strict interpleader because the complainant is not disinterested. It is, however, a bill in the nature of interpleader, and, as heretofore decided by Judge Sweeney, it states a case cognizable in equity. Accordingly, the right to hear it upon the merits was determined by Judge Sweeney, so far as any subsequent proceedings in this court are concerned.

The case was heard on the merits on January 21, 1938, and the facts are as stated in a "Stipulation of Facts" on file. They are incorporated herein by reference and it is unnecessary to restate them in detail.

The complainant issued four policies on February 1, 1926, in which Dr. Vernon C. Stewart was the insured and the respondent Lillie S. Stewart, his mother, was the beneficiary. These policies contained the following identical provisions:

The insuring clause is as follows:

"The Connecticut Mutual Life Insurance Company of Hartford, Connecticut, hereby agrees to pay the sum of * * * Dollars, to Lillie S. Stewart, mother of the Insured, if she survive him, if not, to his executors, administrators, or assigns (subject to the rights of the Insured as hereinafter reserved to change any beneficiary or mode of settlement) upon receipt at the Home Office of the Company in Hartford, Connecticut, of due proof of the death of Vernon C. Stewart of Woburn, State of Massachusetts, herein called the Insured, before the end of the term of Twenty years from and after the due date stated below of the first annual premium hereon; or, if the Insured shall survive to the end of said term, then To Pay the Face Amount of this Policy to the Insured."

The following extracts are taken from the portion of the policies entitled "Other Benefits and Provisions":

"Change of Beneficiary. Subject to the rights of his assignee if any, the Insured may at any time change any beneficiary by filing written notice thereof at the Home Office of the Company on its form therefor, accompanied by the Policy for suitable endorsement by the Company, such

---

change, when so endorsed, to be effective as of the date of the execution of such notice by the Insured."

"*Assignments.* Originals or duplicates of all assignments are to be filed at the Home Office of the Company. The Company will not be responsible for the validity of any assignment."

"*Exercise of Privileges.* All privileges, benefits and options contained in this Policy may be exercised by the Insured without the consent of any beneficiary."

The policies also contained provisions entitled "Optional Settlements at Maturity," reading as follows:

"*Options in Lieu of Payment of Proceeds in a Single Sum.* Upon application by the Insured, if no interest herein under any assignment by him other than to the Company be then outstanding, or upon application by the payee at the maturity of this Policy, the Company will agree, subject to the provisions hereof, in lieu of the payment of the proceeds at maturity as hereinbefore provided, to pay to the payee named in such application:

"Option 1. A specified number of equal annual instalments certain, the first instalment to be payable immediately upon maturity of the Policy, each instalment to be of the amount for each $1,000 of the Policy proceeds as shown in the Table of Instalments hereon opposite the number selected, and such instalments after the first to be increased by such surplus interest earnings as shall from time to time be determined and thereto apportioned by the Company;

"Option 2. Equal annual instalments, continuous during the life of the individual payee named in such application and in any event until the number selected of annual instalments certain shall have been paid, the first instalment to be payable immediately upon maturity of the Policy, each instalment to be of the amount for each $1,000 of the Policy proceeds as shown in the Table of Instalments hereon under the number selected and opposite the last completed age of such payee at the maturity of this Policy, and the instalments certain after the first to be increased by such surplus interest earnings as shall from time to time be determined and thereto apportioned by the Company;

"Option 3. Interest earnings upon the Policy proceeds, accruing from the date of maturity of the Policy, payable monthly, quarterly, semi-annually or annually, as may be requested in such application, at such rate as shall from time to time be determined and thereto apportioned by the Company, but at a rate not less than 3% per annum, during the life of the payee or for a shorter fixed period if requested in said application and thereafter to pay the Policy proceeds in such manner and to such persons as shall have been agreed upon with the Company at the time of such application;

"Option 4. Equal annual, semi-annual, quarterly or monthly amounts, as may be specified in such application, payable until said proceeds with interest accumulations as herein provided are exhausted, the first such amount to be payable upon maturity of the Policy, the balance remaining with the Company after payment of each such periodic amount to be increased by interest earnings at such rate as shall from time to time be determined and thereto apportioned by the Company, but at a rate not less than 3% per annum. * * *

"Any agreement with the Insured to make settlement under one of the foregoing Options shall contain provision for revocation by the Insured and for avoidance in case of change of beneficiary, or assignment by the Insured other than to the Company, or death of the payee before the maturity of this Policy. * * * "

On March 28, 1927, the insurance company received from Dr. Stewart, the insured, his letter of March 24, 1927, inclosing an application for the establishment of an "Interest Income Trust," and stating his desire that knowledge of the transaction should be limited to the home office and himself. The application was in detail, constituted an attempted election of option 3, supra, and sought the kind of an agreement which the insurance company executed March 28, 1927, and mailed to Dr. Stewart on March 29th. This agreement provided in substance that, in lieu of the payment of the proceeds of the policies as therein provided, the company would pay the proceeds to itself as trustee, and that as trustee it would make certain payments. This provision reads:

"(1) The Company will pay interest earnings thereon monthly from the date of such maturity at such rate as shall from time to time be determined and thereto apportioned by the Company but at a rate not less than 3% per annum, to Lillie S. Stewart, mother of the Insured, during her lifetime, and after her death, or after

the maturity of said Policies by the death of the Insured if subsequent to her death, to Betty Linscott, protegee of the Insured, (daughter of one of the insured's oldest friends) during her lifetime, and upon the death of the survivor of said mother and said Betty Linscott, the Company will pay said amount retained in trust, to the then surviving issue of said Betty Linscott, per stirpes, or, if there be no such surviving issue, to the Trustees of the Charles Choate Memorial Hospital of Woburn, Massachusetts."

This agreement provided for its termination "if the Insured shall file with the Company at its Home Office written application for its termination," and it contained other provisions for termination not necessary here to be restated.

Because of the insured's request in his letter of March 24, 1927, the home office of the company gave no information to its Boston agency of the insured's application for the Interest Income Trust Agreement, or its issuance thereof. Neither this, nor the pains taken by the insured to keep the thing to himself, as set forth in the agreed facts, seems to me of great importance. By their terms, the policies left the insured in complete control during his lifetime, and I refer to these matters briefly because they are stipulated and argued.

No further correspondence ensued between the company and Dr. Stewart, who died June 20, 1936.

Next in the order of events came an assignment of June 26, 1936, whereby Lillie S. Stewart, claiming the entire proceeds of the policies as "beneficiary," assigned her claims against the company to the respondents Anna Jaquith and Edward Johnson, in trust for certain purposes.

Upon proof of the insured's death, the company, on July 7, 1936, set up on its books a reserve applicable to these policies. It was included in the company's reserve account entitled "Present Value of Amounts Not Yet Due on Supplementary Contracts Not Involving Life Contingencies." The amount of reserve on these policies as of June 20, 1936, was the entire amount of the policies' proceeds, $24,631.81. Thereupon the company wrote up its Interest Income Certificate of Trust, which reads, for present purposes, substantially as did the agreement of March 28, 1927, heretofore described. On July 10, 1936, the company tendered to the respondent Lillie S. Stewart the certificate of trust, and on or about July 20, 1936, the date when the first payment of interest was stated in the trust agreement to be due, tendered to her its check for the interest, in the amount of $80.55. These tenders were refused solely on the ground that she was claiming the entire proceeds.

On October 13, 1936, the respondents Anna Jaquith and Edward Johnson, trustees by assignment from Lillie S. Stewart, made demand on the company for payment of the amounts of the policies.

The question for determination is whether the complainant, as trustee for the respondents Lillie S. Stewart, Betty Linscott, Woburn Charitable Association, and Percy W. Linscott, guardian of the unborn children of Betty Linscott, is entitled to the proceeds of the policies, or whether Anna Jaquith and Edward Johnson, as assignees of Lillie S. Stewart, are entitled thereto.

The respondents Lillie S. Stewart, Anna Jaquith, and Edward Johnson (hereafter referred to simply as "the respondents") urge that this question is to be determined by Massachusetts law. Their first request for rulings is to this effect. I do not pause to consider whether, under Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, and Mutual Life Insurance Company v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398, Massachusetts law or federal law is to be applied. See note in Harvard Law Review, volume 48, page 979, entitled "Some Recent Implications of Swift v. Tyson." If the Massachusetts courts had decided the problem here at issue one way, and the federal courts another way, a choice would be required, but counsel have referred me to no authorities, state or federal, and I have found none, which point the way to the decision of the controversy presented by the agreed facts.

The three separate briefs filed on behalf of the parties interested in a decision to the effect that the insurance company, as trustee, is entitled to the proceeds of the policies, do not all proceed on the same theory. Taken together, these briefs indicate two permissible views, hereafter stated, as to the effect of the contracts and the subsequent proceedings, but both theories, if tenable, lead to the same result. Counsel for the respondents urges that neither theory is tenable, and that Jaquith and Johnson, trustees, as assignees of Lillie S. Stewart, are entitled to the proceeds of the policies. He contends that the provi-

sion entitled "Change of Beneficiary," and providing that "subject to the rights of his assignee if any, the Insured may at any time change any beneficiary by filing written notice thereof at the Home Office of the Company on its form therefor, accompanied by the Policy for suitable endorsement by the Company, such change, when so endorsed, to be effective as of the date of the execution of such notice by the Insured," was not complied with, and that the effect of such noncompliance is to entitle Jaquith and Johnson, trustees, to the proceeds of the policies. That these provisions were not complied with is clear. But the question remains whether they needed to be followed in order to entitle the insurance company, as trustee, to the proceeds of the policies.

The authorities cited in the respondents' brief to the effect that, so far as this provision entitled "Change of Beneficiary" is concerned, it must be followed, are not fully discussed because they seem inapplicable to the facts of the instant case. The respondents rely heavily upon Resnek v. Mutual Life Insurance Company of New York, 286 Mass. 305, 190 N.E. 603, 604, where, as shown in their brief, the "Change of Beneficiary" clause does not differ much from that here appearing. In that case the court, speaking through Mr. Justice Donahue, said that "the interest of a beneficiary, designated in a life insurance policy containing a reservation to the insured of the right to change the beneficiary named, has been described as 'a qualified vested interest, which is subject to be divested and defeated should the assured in his lifetime exercise the power given him to change a beneficiary in the manner prescribed by the contract between the insurer and the assured.'" The court went on to decide that a substantial compliance by the insured with the provision of the policy regulating change in beneficiaries, or the doing of everything in his power to that end, is a prerequisite to an effective change of beneficiaries, and that on the facts, no such change had been effected. All this applies to the "Change of Beneficiary" clause in the present policies. But the other provisions of these policies are not to be disregarded. These other provisions seem to me controlling and to require the conclusion that what was here done entitles the insurance company, as trustee, to the proceeds of the policies.

The policies provide that they are payable to "Lillie S. Stewart, mother of the Insured, * * * subject to the rights of the Insured as hereinafter reserved to change any beneficiary or mode of settlement * * *." In the paragraph entitled "Exercise of Privileges," it is stated that "all privileges, benefits and options contained in" these policies "may be exercised by the Insured without the consent of any beneficiary." The policies are construed as providing either that the beneficiary may be changed by choosing a mode of settlement, as was here done, or as making the beneficiary's rights subject to the insured's failure to require payment in accordance with the selected option.

It is noteworthy that the respondents' argument goes only to the method by which the original beneficiary's share was reduced from an outright payment of the principal to a life income. They cannot well urge and do not contend that she had any right which was not completely destructible at the insured's whim. Their contention amounts to a claim that, acting under the "Change of Beneficiary" clause, the beneficiary's interest should have been extinguished so as to clear the way for constituting the company trustee in accordance with one of the options contained in the policy. The circumvention suggested is not required. It is conceded, as the policies expressly provided, that all the privileges, benefits, and options contained therein could be exercised by the insured without the consent of any beneficiary, and I can find no good reason for saying that, in order to do so, the insured was required first to change the beneficiary by making the policy payable to his estate or to anybody else, and then selecting his option.

In Rawls v. Penn Mutual Life Insurance Company, 5 Cir., 253 F. 725, 727, where the insured had assigned all interest in the policy without the consent of a revocable beneficiary and had not completed the assignment with such formalities as the company required, and where the policy did not expressly permit assignment without the beneficiary's consent, the question was whether the beneficiary had a right to the proceeds of the policy on the ground that the insured did not first change the beneficiary to his estate before assigning it. This question, which has caused conflicting decisions, is of course different than the question presented in the case at bar, but the opinion contains a statement which does seem applicable. The court said: "The insured at all times prior to his death had complete domination and

72

control of the policies by reason of his reserved right at any time to change the beneficiary. * * * The insured clearly might have changed the beneficiary to himself, or to his estate, without the consent of, or even notice to, the beneficiary, and might then have made the assignment, or granted the lien to the company, and thereafter reinstated his wife as beneficiary. Had he gone through this circumlocution, her interest would undoubtedly thereby have been made subject to the assignment. What he might have done by indirection and circumlocution, he had the right to do by direct action."

The authorities on which the respondents rely, to the effect that one who seeks to change the beneficiary on a life policy containing only the provision entitled "Change of Beneficiary" must comply with its terms, are not applicable to a case where, under other provisions of the policies, the insured had full dominion, and the beneficiary's rights were expressly subject to a "mode of settlement."

A decree to the effect that the insurance company, as trustee for Lillie S. Stewart, for Betty Linscott, for Percy W. Linscott, guardian of the unborn children of Betty Linscott, and for Woburn Charitable Association, is entitled to the proceeds of the policies, is to be entered.